143 So.2d 559 (1962)
Janice CASHELL, a Minor, by Her Next Friend Edward Cashell; and Edward Cashell, Individually, Appellants,
v.
Patricia HART and Alan Hart, As the Natural Guardian of Patricia Hart, and Also Individually; Penney K. Patterson and George W. Patterson, As the Natural Guardian of Penney K. Patterson, Appellees.
No. 2706.
District Court of Appeal of Florida. Second District.
July 6, 1962.
Rehearing Denied August 13, 1962.
H.T. Maloney, of J.B. Patterson & Associates, Fort Lauderdale, for appellants.
*560 Robert E. Ziegler, of Rogers, Morris & Ziegler, Fort Lauderdale, for appellee Penney K. Patterson.
Norman C. Roettger, Jr., of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellees Hart.
WHITE, Judge.
Appellants Janice Cashell and her father Edward Cashell were plaintiffs below in an action for damages deriving from injuries sustained by the said Janice Cashell, a minor. The injuries allegedly resulted from negligence of the defendant-appellees in the operation of a motorboat in the Florida Intracoastal Waterway on March 21st, 1959. The three named defendants included Alan Hart who was owner of the boat but was not an occupant at the time of the injuries in question. The remaining defendants were Alan Hart's minor daughter, Patricia Hart, and another girl, Penney Patterson, also a minor. These girls and the minor plaintiff were the three occupants of the boat when the latter sustained her injuries.
The defendants denied negligence on their part and pleaded affirmative defenses of contributory negligence and assumption of risk. At pretrial conference it was stipulated that the complaint alleged a maritime tort and that the case came within the ambit of admiralty law and the comparative negligence doctrine. The stipulation is consistent with the prevailing concepts of admiralty law.[1] In discussing the incidents and optional forums of proceedings to enforce in personam liability of the owner of a boat for its negligent operation, Gilmore and Black in their text on The Law of Admiralty, Foundation Press, Inc., (1957) comment as follows at page 409:
"* * * It seems perfectly clear that even in the common law action [in state or federal court distinguished from formal libel in admiralty] under the saving clause[2] the admiralty divided damages rule ought to apply, for this is a matter of substance rather than of procedure and it is absurd that a different substantive rule should govern merely because suit is brought in one court rather than in another.[3]"
(Emphasis added)
By a supplementary pretrial order the court ruled that a motorboat was not a "dangerous instrumentality" and that the doctrine of vicarious liability was not applicable. When the cause came on for trial, and before the submission of evidence as such, the court summarily dismissed Alan Hart, owner of the boat, as a party defendant. The court appears to have acted on the strength of a letter written by counsel for the plaintiffs at the direction of the court pertaining to the scope of plaintiff's inquiry on this aspect of the case.
The jury returned a verdict of $1800.00 in favor of Edward Cashell on his derivative claim for doctors' and hospital bills but awarded nothing to Janice Cashell with respect to her personal injuries. Just prior to this verdict the jury had returned a verdict in the same amount for the same plaintiff but apportioned the $1800.00 liability unequally as between defendants Patricia Hart and Penney Patterson. The plaintiffs moved for a mistrial which was denied. The court instead instructed and admonished the jury that such a verdict was improper and sent them back to the jury room for further consideration and another verdict. Then ensued the verdict first above described.
*561 The plaintiffs were dissatisfied with the amount and form of the verdict and with the dismissal of Alan Hart as a defendant. They accordingly moved for a new trial while the defendants, having previously moved for a directed verdict on which the court reserved ruling, moved for judgment notwithstanding the verdict. The court denied plaintiffs' motion for a new trial but entered judgment for the defendants notwithstanding the verdict. The jury foreman, before the verdict was read, made the following statement:
"In reaching our verdict, your Honor, we found that Janice Cashell was contributory in this accident, and that is how we arrived at our amounts. It was unanimous." (Emphasis added)
The court, in the order on the post-trial motions, expressed the court's opinion that "the sense of the jury's adamant stand was that the minor plaintiff's acts were solely responsible for her injuries;" whereupon the court stressed the court's own conclusion that the minor plaintiff "totally assumed the risk of injury by her own actions as a matter of law and thus the plaintiffs are barred from recovery." We shall later touch upon the defense of assumption of risk in relation to the rule of comparative negligence.
The record discloses that plaintiff Janice Cashell, knowing that her position involved a measure of danger, was standing on the bow of the boat which was being operated by the minor defendants. Janice Cashell was looking for floating substances that might impede the boat. Penney Patterson was at the controls under the supervision of Patricia Hart. There was no dispute that the boat was being operated with the actual or implied consent of Alan Hart. There was conflict as to whether the boat swerved slowly or suddenly, but it is clear that Janice Cashell either fell or was thrown into the water and sustained severe facial and head injuries requiring considerable medical and surgical treatment and hospitalization. Penney Patterson had never steered or operated a boat. Immediately prior to plaintiff's fall she, Penney Patterson, turned the wheel to the right at approximately forty to forty-five degrees. Other testimony tended to show that Janice Cashell's injuries may have been sustained partly or mainly by the boat striking her after it had circled and returned to pick her up.
With respect to the first point on appeal questioning the pre-trial dismissal of Alan Hart as a party defendant, it is noted that the complaint alleged in substance that said defendant knew or should have known that Patricia Hart was going to use the boat and would permit Penney Patterson to operate it; that the Harts knew or should have known that Penney Patterson was inexperienced and incompetent as a navigator, notwithstanding which she was permitted to operate the boat and that she negligently caused the damages suffered by the plaintiff. We see no fatal deficiency in this complaint as applied to Alan Hart; nor does it clearly appear that no competent evidence could have been adduced in support of the described allegations.
Generally the owner of a vessel owes to every person lawfully on board by express or implied invitation the duty to provide reasonable security of life and limb and to exercise ordinary care to protect him from injury; and the owner is answerable for any injury suffered by such person on account of a breach of said duty by himself or on the part of those in charge of the vessel. See annotation and cases cited in 63 A.L.R.2d 343, 355; 48 Am.Jur., Shipping, § 541; 29 Fla.Jur., Ships and Shipping, § 16. Liability of the owner may be predicated, for example, on his negligence in entrusting his vessel to an incompetent operator. 63 A.L.R.2d 343, supra, at page 359.[4]
*562 We are convinced that the allegations of the instant complaint, in the light of the subsequent proceedings, sufficiently posed material issues of fact which conceivably could have been resolved against the defendant Alan Hart. It was therefore error to dismiss this defendant precedent to trial and prior to the submission of evidence. See Gissen v. Goodwill, Fla. 1955, 80 So.2d 701.
The second point on appeal urges that it was error to deny the plaintiffs a new trial and grant the defendants' motion for judgment notwithstanding the verdict. We here observe once again that this case was tried under the comparative negligence doctrine, contributory negligence of the plaintiff being no bar to recovery but a factor to be considered in mitigation of damages. The verdict for the father of the minor plaintiff is plainly indicative of findings that the defendants were negligent but that negligence of the minor plaintiff was a contributing factor. On the assumption that the minor plaintiff was negligent, the question remained open as to whether the negligent operation of the boat was a proximate contributing cause of her injuries. As stated, the evidence was conflicting as to whether the minor plaintiff fell or was thrown from the boat; and also amenable to jury determination was the question of whether she was injured by striking the boat on the way down or by the impact of the boat as it returned to pick her up.
Where there is room for rational difference of opinion as to the existence of evidentiary facts from which an ultimate factual conclusion is sought to be established, the court should submit the case to the jury. Budgen v. Brady, Fla.App. 1958, 103 So.2d 672, 674. In support of the order under review counsel cited Gulfstream Park Racing Association, Inc., v. Miller, Fla. App. 1960, 119 So.2d 749. The court there reversed a judgment for the plaintiff and directed entry of judgment for the defendant non obstante veredicto on the ground that the plaintiff, by turning his back on a known danger, assumed the risk of injury and was guilty of contributory negligence. That case was not, however, a comparative negligence case. See comment in Ely v. Atlantic Coast Line Railroad Company, Fla.App. 1962, 138 So.2d 521 at page 524.
It has been noted that the court expressly grounded the judgment in the present case on a finding that the minor plaintiff totally assumed a known risk and consequently was totally precluded, as a matter of law, from recovery of damages. This ruling, if sustained, would have the effect of foreclosing the plaintiffs' case notwithstanding negligence on the part of the defendant. This is not in accord with the law of admiralty.
It is true that recovery has been denied in instances where the plaintiff was found to have knowingly assumed a particular risk, such as a pre-existing mechanical defect, but generally in those cases there was no showing of causative negligence attributable to the defendant, i.e. no supervenient negligence.[5] The courts simply refused to extend to third persons, such as ordinary guests or invitees, the protection of the doctrine of liability without fault sometimes afforded to seamen under another phase of admiralty law relating to unseaworthiness of vessels.[6]
*563 In 48 Am.Jur., Shipping, § 541, supra, the text states at page 368:
"The general principles governing the liability of owners of vessels for personal injuries sustained by third persons are substantially the same as in other cases of personal injury except that contributory negligence is not an absolute defense in admiralty but gives rise to an apportionment of damages. * * *"
See also 1 Benedict on Admiralty (6th ed) page 35, Supp. Vol. I.
In Isaacson v. Jones, 1954, (C.A.9 Wash.) 216 F.2d 599, the libelant was a guest sitting on the gunwale of the respondent's motor boat which was towing a water skier. The libelant was injured when he was thrown overboard as the boat made an unannounced sharp turn. It was contended defensively that the libelant had totally assumed the risk. This contention was rejected. It was found and adjudged that the libelant, while contributorily negligent, was not wholly barred by assumption of risk. The court held:
"* * * Libelant assumed only the risks incident to the reasonable and prudent operation of a boat towing a water skier. The negligence in the operation of the boat * * * consisted of a failure to warn libelant, having knowledge of his perilous position, before making the sharp turn which catapulted him from the boat. Libelant should not be held to have in any way consented to such negligent operation. He may well have assumed the risks naturally incident to riding in a boat towing a water skier, but a negligent failure to warn is not one of those risks." (Emphasis added)
The case was then remanded for the purpose of taking into consideration contributory negligence in assessing damages, thus applying the comparative negligence doctrine.
In the instant case a misapprehension of applicable law is, we think, clearly reflected in the verdict of the jury, the dismissal of defendant Alan Hart and the entry of the judgment non obstante veredicto. We accordingly conclude that the essential issues of the case cannot be litigated properly without a new and plenary trial. Inasmuch as a new trial should have been granted, it follows that judgment for the defendants notwithstanding the verdict should not have been entered. Treatment of other points on appeal, including the question of the assessment of certain costs and requests for attorneys' fees, is deemed unnecessary to this decision.
Reversed and remanded for further proceedings.
ALLEN, Acting C.J., and SMITH, J., concur.
NOTES
[1] See Kermarec v. Compagnie Generale Transatlantique, 1959, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550.
[2] 28 U.S.C.A. § 1333.
[3] See Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Hedger Transp. Corp. v. United Fruit Co., 2 Cir.. 1952, 198 F.2d 376, 1952 A.M.C. 1469. Certiorari denied, 344 U.S. 896, 73 S.Ct. 275, 97 L.Ed. 692.
[4] Fla. Stat. § 371.52 F.S.A. was enacted to take effect July 1, 1959, several months after the incident here involved. This section declares, as a matter of public policy, that motorboats are dangerous instrumentalities. Although this statute purports to relieve the owner of vicarious liability unless he is present in the boat, it does not attempt to relieve him from liability for his own negligence in knowingly permitting unqualified persons to operate the boat. In any event, the substantive law of admiralty is controlling in maritime cases.
[5] See Hogan v. Hellman, 1925 (D.C.Cal.) 7 F.2d 949; Stern v. Franklin, 1939, 290 Mich. 467, 287 N.W. 880; 63 A.L.R.2d 370-371. Compare Isaacson v. Jones, 1954 (C.A.9 Wash.) 216 F.2d 599; Calanchini v. Bliss, 1937 (C.A.9 Cal.) 88 F.2d 82.
[6] The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; Sanford v. Caswell, 5 Cir. 200 F.2d 830.